487 S.E.2d 187

John M. TUPPER, George L. Tupper, Elias Tupper and Tupper's Joint Properties, Respondents/Appellants,

v.

DORCHESTER COUNTY (Dorchester County Council), Patsy Knight, Dorchester County Treasurer, Joan Owen, Dorchester County Tax Collector, The Town of Summerville, John H. Walters, Sr., Francis C. Suggs, Corey Pointe Partners, A South Carolina Partnership, and its partners Kenneth Tolley and James Bell, Defendants,

Of whom Francis C. Suggs is Appellant/Respondent,

and

Dorchester County (Dorchester County Council), Patsy Knight, Dorchester County Treasurer, Joan Owen, Dorchester County Tax Collector, The Town of Summerville, John H. Walters, Sr., Francis C. Suggs, Corey Pointe Partners, A South Carolina Partnership, and its partners Kenneth Tolley and James Bell are Respondents.

No. 24643.

Supreme Court of South Carolina.

Heard April 16, 1997.

Decided June 30, 1997.

O. Grady Query, Charleston, for appellant/respondent.

Morris D. Rosen and Kevin R. Eberle of Rosen, Rosen and Hagood, of Charleston, for respondents/appellants.

Robert H. Hood, John Keith Blincow, Jr., and Dixon F. Pearce, III, all of Hood Law Firm, Charleston, for respondent Dorchester County and Town of Summerville.

Robert D. Robbins of Bell and Robbins, St. George, for respondent Corey Pointe Partners and James Bell.

WALLER, Justice:

These are cross-appeals from an order of the circuit court granting Respondents–Appellants (The Tuppers) summary judgment and holding they had an easement over property owned by Appellant–Respondent (Suggs). The court issued an injunction requiring Suggs to remove an inground swimming pool built over the easement. The Court also granted summary judgment to Respondent, Town of Summerville, finding that it was not liable to the Tuppers for having granted a swimming pool permit to Suggs. We affirm in part, reverse in part, and remand.

## FACTS

The Tuppers own 400 acres of property adjacent to Corey Pointe III subdivision in Dorchester County. To facilitate construction of the subdivision, the developers were required to obtain a drainage ditch easement across the Tuppers' property. On January 23, 1986, the Tuppers conveyed a 20'x 700' drainage easement to Dorchester County, adjacent to a vacant lot in the subdivision. In exchange for the easement, the developers of the subdivision agreed to provide the Tuppers a 40' right of way across a vacant lot. However, the 40' right of way is not memorialized in the ditch easement agreement, nor was it ever formalized by a written agreement. The only indication of the right-of-way is in a plat of the subdivision recorded by the developers with the Dorchester County Clerk of Court. The plat shows the Tuppers' property, a proposed 14" wide gate on their property, the proposed 20' drainage easement, and a "40' R/W" adjacent to the Tupper's property, in the subdivision. The plat also states: "By recordation of this plat, we hereby dedicate all streets and easements to the use of the public forever."

In 1988, the Corey Point Partners (developers) failed to pay $18.99 property taxes assessed by the County on the 40' right-of-way. The property was sold to a man named Walters for $100.00 in 1991. Walters thereafter sold the 40' strip to Suggs, an adjacent landowner in Corey Point, for $150.00.

The deed from Walters to Suggs does not reference the recorded plat of the subdivision. In 1992, having received a permit from the Town of Summerville, Suggs constructed an inground swimming pool on the 40' strip, completely obstructing the Tuppers' right of way.[1]

The Tuppers brought this suit seeking a declaration that they had an enforceable easement,[2] and an injunction and damages. The Court granted the Tuppers summary judgment, finding they had an enforceable easement, and Suggs was ordered to remove the pool. The Town of Summerville was granted summary judgment on the ground that it was not liable to the Tuppers for having issued a pool permit to Suggs.

## SCOPE OF REVIEW

■ The determination of the existence of an easement is a question of fact in a law action and subject to an any evidence standard of review when tried by a judge without a jury. *Jowers v. Hornsby*, 292 S.C. 549, 357 S.E.2d 710 (1987). However, the determination of the extent of a grant of an easement is an action in equity. *Moore v. Reynolds*, 285 S.C. 574, 577, 330 S.E.2d 542, 544 (Ct.App.1985). Thus, this Court may take its own view of the evidence on the latter issue. *Townes Assocs., Ltd. v. City of Greenville*, 266 S.C. 81, 221 S.E.2d 773 (1976).

## ISSUES

1. Did the court err in finding the Tuppers had a valid easement? (Suggs' Appeal).

2. Did the court err in finding that the Town of Summerville's issuance of a swimming pool permit did not form the basis for liability to the Tuppers? (Tuppers' Appeal).

---

1. The Tuppers did not learn the property had been conveyed to Suggs until October, 1992.

2. We note that the terms easement and right of way have been used interchangeably. *See* 12 S.C. Juris. *Easements*, § 18 (1992); 25 Am. Jur.2d *Easements*, § 7 (1996); 28(A) C.J.S. § 12(b) (1996).

## 1. EASEMENT

Suggs contends the trial court erred in granting the Tuppers summary judgment. He claims a) no easement was validly created as there is no writing to satisfy the statute of frauds, b) any easement was "in gross" rather than "appurtenant" such that it did not survive the transfer of ownership from the Tuppers, as individuals, to their corporation, Tupper's Joint Properties, and c) there was no dedication of the alleged easement to the public. We agree with Suggs' second and third claims and, accordingly, reverse the grant of summary judgment.

### a. Sufficiency of Writings

■ As an initial matter, Suggs asserts there is no writing memorializing the easement sufficient to satisfy the statute of frauds, S.C.Code Ann. § 32-3-10 (1991). Suggs neither raised this issue, nor was it ruled on by the trial court; it is therefore not preserved for review. *Turbeville v. Gordon*, 233 S.C. 75, 103 S.E.2d 521 (1958)(statute of frauds may not be raised for first time on appeal).[3]

■ In any event, the purpose of the statute of frauds is to protect the promisor and may be waived by him. *Cooper v. A.A.A. Highway Express, Inc.*, 206 S.C. 372, 34 S.E.2d 589 (1945). *Cf. American Wholesale Corporation v. Mauldin*, 128 S.C. 241, 122 S.E. 576 (1924)(statute of frauds is an affirmative defense which must be pled); *Hatcher v. Harleysville Mutual Insurance Co.*, 266 S.C. 548, 225 S.E.2d 181 (1976)(a stranger to an oral contract cannot avail himself of the fact that the statute of frauds renders the contract unenforceable). Accordingly, the statute is not available as a defense to Suggs.

■ Finally, Suggs failed to properly contest the manner of the easement's creation. Although he vaguely mentioned the easement was not properly recorded, he essentially conceded the existence of some type of easement, claiming only that it was in gross, rather than appurtenant. Having failed to properly raise the issue below, he may not do so now.

---

**3.** Although the issue of the statute of frauds was raised by Dorchester County, appellant cannot bootstrap an issue for appeal by way of a codefendant's objection. *Brock v. Board of Adjustment*, 308 S.C. 539, 419 S.E.2d 773 (1992); 4 C.J.S. *Appeal and Error* § 251 (1957).

Accordingly, we affirm the grant of summary judgment insofar as the trial court found the existence of an easement.

### b. Appurtenant vs. In Gross

■ Suggs next asserts there are genuine issues of material fact as to whether the easement created is appurtenant or in gross. We agree.

■ Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Summary judgment is not appropriate where further inquiry into the facts of the case is desirable to clarify the application of the law. *Baugus v. Wessinger*, 303 S.C. 412, 401 S.E.2d 169 (1991); *Standard Fire Ins. Co. v. Marine Contracting & Towing Co.*, 301 S.C. 418, 392 S.E.2d 460 (1990). Summary judgment should not be granted even when there is no dispute as to evidentiary facts if there is dispute as to the conclusion to be drawn from those facts. *Gilliland v. Elmwood Properties*, 301 S.C. 295, 391 S.E.2d 577 (1990). All ambiguities, conclusions, and inferences arising from the evidence must be construed most strongly against the movant. *Baugus, supra.* We agree with Suggs that there remain genuine issues of material fact in this case and, accordingly, reverse the grant of summary judgment.

■ The character of an express easement is determined by the nature of the right and the intention of the parties creating it. 25 Am.Jur.(2d) *Easements and Licenses* § 13 (1966). An easement in gross is a mere personal privilege to use the land of another; the privilege is incapable of transfer.[4] *Sandy Island Corp. v. Ragsdale*, 246 S.C. 414, 143 S.E.2d 803 (1965). In contrast, an appurtenant easement inheres in the land, concerns the premises, has one terminus on the land of the party claiming it, and is essentially necessary to the enjoyment thereof. *Id.; Smith v. Commissioners*, 312 S.C. 460, 441 S.E.2d 331 (Ct.App.1994); *Carolina Land Company, Inc. v. Bland*, 265 S.C. 98, 217 S.E.2d 16 (1975); *Sandy Island Corp. v. Ragsdale, supra*; 12 S.C. Juris. *Ease-*

---

4. In 1987, the Tuppers transferred their property to Tupper's Joint Properties. Suggs contends their easement in gross was extinguished upon the transfer to the partnership.

*ments* § 3. It also passes with the dominant estate upon conveyance. *Carolina Land Co., Inc. v. Bland, supra.* Unless an easement has all the elements necessary to be an appurtenant easement, it will be characterized as a mere easement in gross. 12 S.C. Juris. *Easements* § 3(c). Where language in a plat reflecting an easement is capable of more than one construction, that construction which least restricts the property will be adopted. *Hamilton v. CCM, Inc.* 274 S.C. 152, 263 S.E.2d 378 (1980).

We find a genuine issue of material fact exists as whether or not the easement was necessary to the enjoyment of the Tuppers' estate. Although the Tuppers assert they have no other access from their property through Corey Pointe Subdivision III to Four Iron Court, nor to any other Street in that subdivision, it is clear from the hearing that there is other access which is simply less convenient. Accordingly, the trial court erred in finding that the easement was "necessary to the enjoyment of the dominant estate." We reverse the grant of summary judgment on this issue and remand for further proceedings.

### c. Public Dedication

In addition to finding the easement appurtenant, the trial court found the easement had been publicly dedicated. This was error.

Two elements are required to perfect dedication. First, the owner must express in a positive and unmistakable manner the intention to dedicate his property to public use. Second, there must be acceptance of such property by the public. *Helsel v. City of North Myrtle Beach,* 307 S.C. 24, 413 S.E.2d 821 (1992). Dedication is an exceptional manner of passing an interest in land and proof thereof must be strict, cogent, and convincing. *Mack v. Edens,* 320 S.C. 236, 464 S.E.2d 124 (Ct.App.1995). To have a completed dedication, there must be some form of acceptance of the offer to dedicate. *Baugus v. Wessinger, supra;* 23 Am.Jur.2d *Dedication* § 42 at 38 (1983); *Hodge v. Manning,* 241 S.C. 142, 127 S.E.2d 341 (1962). The use, repair, and working of the streets by public authorities is a mode of acceptance. *Chafee v. City of Aiken,* 57 S.C. 507, 35 S.E. 800 (1900). The mere fact the

County approved the plat does not constitute an acceptance of the proposed public dedication. S.C.Code Ann. § 6–7–1070(1976).[5] *See also Salzer v. Green,* 48 Mich.App. 34, 209 N.W.2d 849 (1973)(approval of plat, standing alone, does not amount to formal acceptance of land in plat dedicated to public). The nonassessment of taxes is a factor in the determination of dedication and acceptance. *Helsel v. City of North Myrtle Beach,* 307 S.C. 24, 413 S.E.2d 821 (1992). The payment of taxes on disputed property is evidence contrary to the intent to dedicate property to the public. *Anderson v. Hemingway,* 269 S.C. 351, 237 S.E.2d 489 (1977). It is the duty of the fact finder to determine whether or not the public dedication has been accepted. *McAllister v. Smiley,* 301 S.C. 10, 389 S.E.2d 857 (1990).

Here, as noted previously, the developers recorded the plat of Corey Pointe Subdivision with the annotation "By the recording of this plat, we hereby dedicate all streets and easements to the use of the public forever." Although the developers conceded their intent to dedicate the right of way, it is undisputed they paid the taxes on the property in 1987, subsequent to the alleged dedication. Further, although there is no dispute that the government had accepted and maintained many of the streets and easements shown on the plat, there is simply no evidence that the 40' right of way was ever maintained or accepted by the public. On the contrary, the attorney for the county argued at the hearing that, in fact, the evidence would show that the city engineer testified in deposition that the city never undertook to maintain the right of way as it did not go anywhere. Even if the government did accept the public dedication with respect to some of the streets and easements, there is simply no indication in the record it did so with respect to the Tupper's right of way. We find a genuine issue exists as to whether the County, in fact, accepted the dedication of the right of way. Accordingly, the grant of summary judgment on this issue is also reversed. *Cf. Baugus v. Wessinger, supra* (even where evidence demonstrates partial acceptance, further evidence was required to ascertain total acceptance).

---

5. This section was repealed by 1994 Act No 355, § 2, effective May 3, 1999.

## 2. TOWN OF SUMMERVILLE'S LIABILITY

The Tuppers named the Town of Summerville as a defendant, claiming that it was liable under the Tort Claims Act, S.C.Code Ann. § 15–78–60(12) (Supp.1996),[6] for having been grossly negligent in its issuance of a swimming pool permit to Suggs. The trial court granted Summerville summary judgment, finding that, since Suggs was being ordered to remove the pool, the Tuppers had suffered no damages by Summerville's issuance of a pool permit. In light of our reversal of the grant of summary judgment in Suggs' appeal, it remains to be determined whether Suggs will be required to remove the pool and whether the Tuppers have suffered any damages. Accordingly, as this was the sole basis of the trial court's ruling, we reverse the grant of summary judgment on this issue and remand for further proceedings.[7]

## CONCLUSION

To the extent it found the existence of an easement, the order of the circuit court is affirmed. However, we reverse the grant of summary judgment as to the findings that the easement was appurtenant and that it had been publicly dedicated. We also reverse the trial court's grant of summary judgment as to the Town of Summerville as there exists a genuine issue as to the matter of the Tuppers' damages. Accordingly, the judgment below is

**AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.**

FINNEY, C.J., and TOAL, MOORE and BURNETT, JJ., concur.

---

6. This section provides that a governmental entity is not liable for loss resulting from the issuance of a permit, license, etc., except when the power is exercised in a grossly negligent manner.

7. The trial court did not rule on the merits of the Tuppers' claims that Summerville had been grossly negligent in issuing the permit or the claim that it owed a special duty to prevent such harm to them. Accordingly, we decline to do rule on the merits of an issue not ruled on below. *Food Mart v. SCDHEC*, 322 S.C. 232, 471 S.E.2d 688 (1996)(issues not ruled on by trial court are not preserved for review); *Cook v. SCDHPT*, 309 S.C. 179, 420 S.E.2d 847 (1992).